FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 SEP 23 AM 9: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SUSIN HEROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 98-PT-0568-M |
| v. | ) | |
| | ) | |
| AMERICAN CENTRAL INSURANCE | ) | |
| COMPANY, a corporation, and | ) | |
| COMMERCIAL UNION INSURANCE | ) | |
| COMPANY, a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

SEP 23 1998

## MEMORANDUM OPINION

This cause comes to be heard on Defendants' Motions for Summary Judgment against Plaintiff filed August 3, 1998.[1]

### I. Background and Facts

Susin Herod ("Ms. Herod" or "Plaintiff") owned a home at 9381 U.S. Highway 278 East, Hokes Bluff, Alabama, that was destroyed by fire on July 28 and July 29, 1997. The home was insured under an American Central Insurance Policy No: MZ-SL76554. American Central is one of the Commercial Union insurance companies, although the policy was issued only in the name of American Central. The property at issue was purchased in 1985 by Ms. Herod and is held in her name alone, although she and her husband, Lee Herod, have lived together on the property since its purchase.

---

[1]The court will not repeat the well known standards applicable to consideration of motions for summary judgment.

In February of 1996, Plaintiff sought homeowners insurance, through the Insurance Facilities Agency, with American Central for the home located on the Hokes Bluff property. The application signed by Ms. Herod in connection with her attempt to obtain insurance made a number of representations concerning Ms. Herod's financial history, the use and size of the property, and Ms. Herod's loss history. The veracity and significance of these representations are disputed issues in this case.

On July 28, 1997, at approximately 9:00 A.M., about an hour after Ms. Herod had left for work, a fire occurred in Ms. Herod's home. The fire originated at the stove and directly damaged the den and the kitchen on the first floor of the home, while causing smoke throughout the house. The total damages caused by the initial fire were estimated at between $25,000.00 and $30,000.00. Chief Tom Mahal of the Hokes Bluff Fire Department considered the fire to be of a suspicious origin. Approximately eighteen hours after the first fire was reported, at about 3:00 A.M. on July 29, a second fire was reported at the Herods' home. The second fire caused the total destruction of the home, caused over $200,000 in total damages, and was considered suspicious in nature by both Mr. Mahal and by the Alabama Fire Marshall, Jim Epperson.

Following the fires, American Central hired fire investigators to investigate the loss claimed by Ms. Herod. The investigators considered both fires to be of suspicious origin and concluded that the second fire originated in the living room where the Herods' furniture was stacked in a pile in the middle of the room. According to the investigators' report, the fire's intensity also indicated origins in the kitchen, den, hallway, foyer, stairwell, second floor hall and second floor master bedroom. The investigators also concluded that some unknown flammable liquid was used to ignite and support the fire and that the fire was set intentionally. Samples taken from the home for testing were, however, not able to confirm the presence of such liquid.

On August 1, 1997, agents for American Central met with Plaintiff and her husband to discuss the claim and to get information. The Herods, at that time, refused to submit to individual examinations under

2

oath and refused to sign an authorization for the release of financial information. Although the Herods, after hiring an attorney, did submit to oral examinations on September 10, 1997, according to American Central, the Herods' actions at the August 1 meeting amounted to a failure to cooperate with the investigation. Thus, based on the information contained in the report of its investigators and, presumably, on the Herods' alleged failure to cooperate with the investigation, American Central denied Ms. Herod's claims based on suspicion of arson.

On or about February 5, 1998, Ms. Herod filed an action against American Central and Commercial Union ("Defendants") alleging breach of contract and bad faith. American Central and Commercial Union removed the action based on diversity and the amount in controversy. American Central and Commercial Union then filed answers denying the complaint and alleging that the policy was void *ab initio* because of alleged misrepresentations made by Ms. Herod in applying for the insurance and during the investigation, that the policy was void as a result of the Herods' refusal to cooperate with the investigation concerning the fires, and that the claims were barred due to arson by Plaintiff. Further, Commercial Union alleges that, because it did not write the insurance policy at issue, it cannot be liable for either of Plaintiff's claims. American Central and Commercial Union now move for summary judgment.

**II. Privity of Contract Between Plaintiff and Commercial Union**

Commercial Union asserts that because the policy at issue, even if valid, was made between Ms. Herod and American Central, there exists no privity of contract between Commercial Union and Ms. Herod. Commercial Union therefore claims that there exists no avenue by which Ms. Herod may maintain a breach of contract claim or a bad faith claim against Commercial Union. Plaintiff's reply brief does not respond to Commercial Union's argument, although Susin Herod mentions in her affidavit that, although the was issued through American Central, her premium payments went to Commercial Union.

3

### III. Breach of Contract Claims

#### A. Misrepresentations

Defendants contend that Plaintiff's claim for breach of contract fails as a result of "material misrepresentations" made by Ms Herod in the completion of her application for homeowners' insurance on February 19, 1996. According to Defendants, Plaintiff's answers to questions on the application regarding her financial history, her loss history, whether a business was operated at the home and how much land the property covered were false and misleading. Plaintiff responds by claiming that the Defendants' questioning caused the answers on the application to mislead the Defendants. The parties agree that Plaintiff originally answered Defendants' questions via a phone interview. An agent for the insurer was the one who actually asked the questions. According to Plaintiff, the questions were asked by the agent in a manner that was either ambiguous or that changed the scope of the question as actually stated on the form.

#### 1. Specific Alleged Misrepresentations

The application signed by Ms. Herod stated that the applicant had not had a foreclosure, repossession or bankruptcy during the previous five years. Defendants, relying on both the records of the Bankruptcy Court and the deposition of Ms. Herod, show that Ms. Herod filed for bankruptcy in 1990 and that the trustee was not discharged until 1993. The bankruptcy was still pending five years prior to the date the application was completed. Thus, the Defendants claim that Ms. Herod's answer was clearly false.

Ms. Herod acknowledges having answered a question on the phone regarding past foreclosures and bankruptcies, but claims that the agent asked whether she had <u>filed</u> for bankruptcy in the previous five years, not if she had been <u>involved</u> in a bankruptcy during that time. She claims that the question, as asked during the phone conversation, pertained only to the filing date, not to the rest of the bankruptcy proceeding. Ms. Herod thus claims that the manner in which the question was asked caused her to answer incorrectly and

4

that she did not intend to deceive or mislead the Defendants.

Another question on the application dealt with whether or not any business was operated on the insured property. When asked, Plaintiff stated that no business was operated on the premises. Defendants claim that the answer was false and misleading in that Plaintiff's husband operated his automobile repossession business from their home during that time. Mr. Herod, in his deposition, admits to having worked out of the house. Plaintiff acknowledges in her deposition that Mr. Herod received dispatches and phone calls regarding his business at the house, but denies that she was untruthful in stating that no business was operated from the home. The house, says Plaintiff, was not a place where the public came to buy, sell or conduct business. Rather, it was simply a place where her husband received his business calls and dispatches sending him throughout the state and region. The auto repossession business operated, according to Ms. Herod, all over Alabama and neighboring states. She thus states that she was being truthful in claiming that no business operated out of the house and that she did not intentionally misrepresent the truth of the matter.

The application also asked if Ms. Herod had claimed any losses in the previous three years. Plaintiff claimed not to have experienced any insurance losses in the given time period. However, in November of 1993, while insured with Nancy Davis Nationwide Insurance, Ms. Herod claimed a loss for the burglary of her car. Ms. Herod also owned a commercial building in Albertville, Alabama. The property was insured through the Brothers Insurance Agency with American Indemnity Insurance Company. On May 13, 1994, the Albertville property was totally destroyed by fire. American Indemnity Insurance Company paid a check to Susin and Lee Herod for the damaged property on January 4, 1995. Defendants claim, therefore, that Plaintiff misrepresented her loss history on the application.

Ms. Herod disputes the claim that she intentionally misrepresented her loss history to the Defendants. She maintains that, when asked of her loss history, the agent asked if Ms. Herod had

experienced any <u>home</u> <u>fire</u> <u>losses</u> in the previous three years. She claims that the question, as asked, did not call for the disclosure of all insurance losses in the previous three years, but only home fire losses. According to Ms. Herod, she, not having experienced any home fire losses, truthfully answered 'no' to the question.

Finally, the application indicated that the property was not situated on more than five acres. In her deposition, Ms. Herod acknowledges that the property covers well above five acres. Defendants claim that this answer represents yet another intentional falsehood. Ms. Herod, however, claims never to have answered a question on the phone regarding the size of the lot on which the house sat, and maintains that she never misrepresented its size, despite having signed the application.

Plaintiff thus claims to have accurately answered the questions as they were asked of her and states, in her deposition, that she did not read the application prior to signing it. Defendants retort by stating that Plaintiff was given ample opportunity to review the application before signing it and voluntarily signed it without correcting the numerous misrepresentations. In essence, Defendants maintain that even if the agent did not ask the questions exactly as they appeared on the application, Plaintiff remains responsible for the answers on the application because of the ample opportunity given her to review the document.

### 2. Defendants' Legal Arguments Surrounding the Misrepresentations

Defendants rely on both the Alabama Code and related caselaw to support their claim that, because of the alleged misrepresentations, the policy was void *ab initio*. Defendants first claim that Plaintiff is prevented from recovering under the policy at issue under Alabama Code §27-14-7. Section 27-14-7 states:

> (A) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations herefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy

6

> or contract unless either:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
>
> Ala. Code §27-14-7 (1975).

Defendants also cite several cases decided under §27-14-7, holding that an intentional misrepresentation of material fact by an applicant for insurance, if relied upon by the insurer to its prejudice, provides adequate grounds for a voidance of a policy. See Reliance Insurance Co. v. Substation Products Corp., 404 So.2d 598, 604 (Ala. 1981); Martin v. Pate, 749 F.Supp. 242 (S.D. Ala. 1990), affirmed, 934 F.2d 1265 (11th Cir. 1991). Defendants then cite the 11th Circuit's interpretation of Alabama law in Stevens v. Guardian Life Insurance Co., 742 F.2d 1329 (11th Cir. 1984), that "The most innocent misrepresentation will afford a reason to rescind if a truth is either materials to the risk or, even if immaterial, would have caused the particular insurer acting in good faith to have declined coverage." Id. at 1333.

In attempting to prove reliance, Defendants offer the affidavit testimony of Robert O. Lilley, the regional general adjuster for CGU, the holding company of American Central and Commercial Union, stating that the misrepresentations in Plaintiff's application were material in nature and that the policy would not have been issued if not for the misrepresentations. Defendants thus contend that, because Plaintiff is responsible for the misrepresentations made on the application, whether considered intentional or unintentional, this case falls within the statute and cases outlined above.

7

### 3. Plaintiff's Response to the Misrepresentations Arguments

Plaintiff claims that Defendants' arguments are ineffectual in that §27-14-7 does not apply to renewal policies and in that Defendants have failed to prove that the misrepresentations were intentional. Plaintiff also claims that even if the misrepresentations could act to rescind the policy, whether or not such misrepresentations were material and whether the insurer actually relied on such misrepresentations is generally a question for the jury.

#### a. Section 27-14-7 and Renewal Policies

Plaintiff states that it is the law of the State of Alabama that misrepresentations, omissions, concealment of facts, and incorrect statements in an application for insurance do not prevent a recovery except on a policy or contract issued in direct and immediate response to the false application. The policy at issue in this case, argues Plaintiff, was not the policy issued in response to her application for insurance of February 21, 1996. The 1996 application applied to the February 1996 through February 1997 policy – a policy no longer in effect on July 28 and 29 of 1997. The policy in effect when the fire occurred, says the Plaintiff, was a renewal policy. Furthermore, Defendants' exhibit #3, an initial loss report done by Defendants' agents, refers to the policy as a "renewal policy."

In support of her position regarding renewal policies under §27-14-7, Plaintiff cites State Farm General Insurance Company v. Oliver, 658 F.Supp. 1546 (N.D. Ala. 1987), a federal district court case interpreting Alabama law, where the court stated:

> The only policy or contract here issued in response to Mr. Oliver's application of November 16, 1984, was not the 'policy or contract' which was in force at the time of the fire. The policy here involved was a renewal issued one year after November 16, 1984. When the Alabama legislature provided "misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery . . . unless', it obviously was mandating a strict interpretation of its subsequent

8

> language in favor of the insured. If literally construed, §27-14-7(a)(3) made no reference to any 'policy or contract' except a 'policy or contract' issued in direct and immediate response to the false application. Id at 1550.

The Alabama Supreme Court concurred with the interpretation of the United States District Court in <u>Alfa Mutual General Insurance Company v. Oglesby</u>, 711 So.2d 938 (Ala. 1997). In <u>Oglesby</u>, the Alabama Supreme Court stated that §24-14-7 of the Code of Alabama did not apply to renewal policies and, because the policy in issue was a renewal policy, the court determined that a directed verdict in favor of the insured was warranted in regard to the insurer's claim that the policy was void because of the insured's misrepresentations. Based on the reasoning in <u>Oliver</u> and <u>Oglesby</u>, the policy at issue in this case, according to the Plaintiff, is not subject to the exception in §27-14-7. Thus, the alleged misrepresentations in the February 1996 application, even if attributable to the Plaintiff, do not apply to the 1997 policy at issue and do not provide grounds for the rescinding of the contract.

Defendants respond to the renewal policy argument by stating that nothing in Alabama Code §27-14-7 indicates that it applies only to the initial application and the initial policy. According to Defendants, there existed only one application, an application Ms. Herod was not truthful in completing. Defendants contend that, under their reading of the statute, §27-14-7 should apply to the one and only application filled out by the Plaintiff. Defendants base their reading on 43 Am.Jur. Second Insurance §1020 (1982), which reads "In the absence of a new application or anything showing a different intention, the renewal of a fire insurance policy is impliedly made on the basis that the statements in the original application or policy are still accurate and operative." Under the rationale of Plaintiff's argument, say the Defendants, an insured could give false information on an insurance application, hide the truth for a year, and thereafter rid themselves of the consequences of being truthful. The statutory exception, state the Defendants, should therefore apply to renewal policies such as the one at issue in this case.

### b. Failure to Prove Intent

Plaintiff also claims that the Defendants have failed to present the evidence necessary to rescind the insurance policy and sustain a motion for summary judgment. Plaintiff states that, according to Bankers Life & Casualty v. Long, 345 So.2d 1321 (Ala. 1977), to defeat an insurance policy on grounds of misrepresentation in the application, it must appear that the misrepresentations were false, were made with actual intent to deceive <u>or</u> the matter misrepresented increased the risk of loss <u>and</u> that the insurer relied on them to its detriment. Plaintiff cites Orient Insurance Company v. Parkhill, 170 F.2d 510 (5th Cir. 1948) and National Life and Accident Insurance v. Cummings, 172 So 353 (Ct. App. Ala. 1937), to support the argument that, in order to defeat the recovery of an insured under Alabama law, the insured must have made the misrepresentation with an actual intent to deceive. According to the reasoning in Parkhill, the misrepresentations, if made inadvertently or innocently, are insufficient to defeat recovery. Parkhill, 170 F.2d 510.

### c. Jury Questions

Plaintiff contends that even if the misrepresentations did apply to the policy at issue, the question of the materiality of a misrepresentation on a policy application and of whether the insurer's risk of loss was increased by the misrepresentation is generally a jury question. Plaintiff first claims that the alleged misrepresentations were immaterial and did not increase the risk of loss to American Central, and points to the reasoning in cases such as Bennett v. Mutual of Omaha Insurance Company, 976 F.2d 659 (11th Cir. 1992) and State Farm General Insurance Company v. Oliver to support her contention that the jury should decide such matters. State Farm General, 658 F.Supp. at 1550. Bennett states that the materiality of a misrepresentation on a policy application is generally a jury question. 976 F.2d at 661. Similarly, in State Farm, the court decided that the question of whether an insurer, in good faith, would have declined to issue

10

a policy if not for the misrepresentations of the insured was a jury question. 658 F.Supp. at 1550. Additionally, claims the Plaintiff, <u>Clark v. Alabama Farm Bureau Cas. Ins. Co.</u>, 465 So.2d 1135 (Ct. App. Ala. 1984) supports the claim that the issue of whether a particular misrepresentation increases the risk of loss assumed by the insurance company so as to permit the company to avoid the policy, is generally one for the jury. Defendants, however, respond by stating that there exists no issue of fact for a jury to decide. According to the Defendants, the testimony of Mr. Lilley has not been contradicted by any evidence provided by Ms. Herod. His statements regarding the materiality of the misrepresentations and the fact that the policy would not have been issued if not for such misrepresentations are, say the Defendants, undisputed. Because the Plaintiff has not provided any evidence contradicting the claim that the misrepresentations were material, misleading and relied upon, there is no factual matter for the jury to determine.

## IV. Failure to Cooperate

Defendants' second major claim is that, following the loss, Ms. Herod voided the policy through her failure to cooperate with the investigation. Ms. Herod, according to the Defendant failed to comply with the provisions in the policy detailing the duties of a claimant following a loss. Page 8 of Defendants' Exhibit #1, Plaintiff's policy with American Central, requires a claimant to provide an inventory of damaged personal property with bills, receipts and related documents attached, to show the damaged property, to provide American Central with records and documents as requested and to submit to and sign an examination under oath, while not in the presence of any other insured, following a loss. Defendants claim that Ms. Herod's behavior following the fires failed to comply with several of the above requirements and that she, therefore, voided the contract.

Defendants first point to Ms. Herod's behavior during the August 1, 1997 meeting with agents of

11

American Central conducting an investigation of the fires. The meeting was set with Ms. Herod for the purpose of discussing the loss and taking recorded statements. As stated above, during the meeting both Ms. Herod and her husband refused to give statements to the agents. They also refused, at that time, to sign an authorization to release financial information to American Central. Ms. Herod stated in her deposition that, during the August 1 meeting, she refused to submit to an examination because she was on medication and was mentally and physically unable to answer the questions. Later, after hiring an attorney, Ms. Herod did, on September 10, 1997, submit to an examination under oath, during which she admitted to having refused to give a statement and sign the financial release authorization during the August 1st meeting. Additionally, even after submitting to the examination, claim Defendants, Ms. Herod refused to cooperate by signing the financial release authorization and refused to divulge the truth of her financial situation.

During the examination, Ms. Herod stated that she had no past-due debts and that she was not under any financial pressure at the time of the fires. However, according to the investigation done by the Defendants, Ms. Herod owed a past-due balance on her house payments to the Home Bank of Albertville of over $4,000.00 at the time of the fires. Ms. Herod, according to the investigation, was four months delinquent in the payments and, according to an investigator, the mortgage company had started foreclosure proceedings. According to the investigation, the original amount of the loan was $96, 733.66 and the payoff as of July 31, 1997 was over $100,000.00. The investigators also learned of numerous, apparently unsatisfied, judgments against Ms. Herod and/or her husband, and of Ms. Herod's bankruptcy.[2] They also learned that Mr. Herod had filed for bankruptcy on several occasions as well. According to the Defendants, Ms. Herod was also late, on numerous occasions, in making her insurance payments. During her

---

[2]Plaintiff states that the judgments against her referred to by the Defendants' investigators were discharged in bankruptcy. Defendants, however, contend that the judgments do not indicate that they were discharged and that, nonetheless, some of the judgments entered against her husband were entered after her bankruptcy.

12

examination, Ms. Herod eventually acknowledged having received threatening letters regarding her nonpayment of premiums.

Defendants' final allegation regarding Plaintiff's failure to adhere to the duties under the policy concerns the inventory of property submitted by Ms. Herod. According to the Defendants, Ms. Herod included a quote regarding a computer system with the inventory list. However, Defendants' investigators later found that the computer was not actually burned in the fire and remained in good condition. Defendants thus contend that Plaintiff failed to comply with the requirements of the policy by filing an inaccurate personal property inventory.

The Defendants maintain that the policy issued to Ms. Herod establishes, as a strict condition precedent to any liability under the contract, that Ms. Herod provide the investigator with the records and documents requested, provide an inventory of the damaged property, and perform her other duties under the contract. Defendants cite <u>United Insurance Company of America v. Coke</u>, 630 So.2d 407 (Ala. 1993), to support their contention that, under Alabama law, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract. Defendants also point to <u>Nationwide v. Nilsen</u>, 1998 W.L 321965 (Ala. 1998), a recent Alabama Supreme Court case holding that an insured can only recover under an insurance contract for breach of contract if the insured has complied with the conditions of that contract. As they believe that the Plaintiff's actions and behavior did not comply with the duties set out in the contract, the Defendants claim that she has voided the policy and should not be able to recover on a breach of contract theory. The Defendants recognize that the Plaintiff, in her reply brief, claims to have complied with the requirements set out in the contract. Defendants point out, however, that she makes this claim despite the fact that she has yet to sign the authorization for the release of financial information and did not submit to the examination until having hired an attorney.

### A. Plaintiff's Response to the Non-Cooperation Claim

Plaintiff responds to the Defendants' allegations and arguments concerning the cooperation issue by claiming full compliance and by arguing that, in any event, compliance is an issue that should be left to the jury. Ms. Herod first asserts that, following the fires, she complied with all of the requirements set out in the policy and cooperated, to the best of her ability, with the investigation. For example, she states that she prepared an accurate inventory of the damaged personal property, but was unable to attach many of the related receipts and bills because they were destroyed in the fires. She also claims never to have filed a claim for the value of the computer system and states that she does not know why the insurance company believes she did so. Additionally, she claims to have complied with the requirements that she show the property, provide records and documents as requested by the insurer, and submit to an examination under oath before a court reporter.

In further arguing against summary judgment, Plaintiff states that the rule in Alabama is clear that when an insurer asserts the failure of the insured to comply with the conditions, or relies on an exclusion or on forfeiture, it must plead and prove the failure of the insured to comply. Plaintiff points to Alabama Farm Bureau Mutual Casualty v. Teague, 110 So.2d 290 (Ala. 1959), a case involving an insurer's duty of cooperation claim, holding that whether or not the insured breached the duty to cooperate with the insurer is a question of fact left to the jury. Plaintiff also cites Home Indemnity v. Reed Equipment, 381 So.2d 45 (Ala. 1989), in which the court holds that the acts of non-cooperation must be material and substantial, resulting in prejudice to the insurer.

### V. The Bad Faith Claims

### A. Defendants' Arguments Against the Bad Faith Claims

Defendants, citing Alabama caselaw, state that in order to sustain a bad faith claim against an insurer

14

in Alabama, a plaintiff must show prove the following:

> (1) an insurance contract between the parties and a breach thereof;
> (2) an intentional refusal to pay the insured's claim;
> (3) the absence of any reasonably legitimate or arguable reason for that refusal;
> (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason
> (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

See e.g., Liberty Mutual v. Allen, 1997 WL 99724 (Ala. 1997); Harrington v. Guaranty National Insurance Co., 628 So.2d 323 (Ala. 1993); National Security Fire and Cas. Co. v. Bowen, 417 SO.2d 179 (Ala. 1982). Defendants contend that, based on the above criteria, Plaintiff cannot possibly meet her burden of proof for the bad faith claim.

Defendants claim that Ms. Herod's bad faith claim clearly fails because American Central had a legitimate or arguable reason for denying the claim. The "legitimate or arguable reason" for the denial, claim the Defendants, is the belief that arson was the cause of the fires. Both American Central and Commercial Union pled the affirmative defense of arson in their answers to the original complaint. In order to establish the affirmative defense of arson, the insurer must prove: (1) the fire was intentionally set; (2) the insured had motive for committing the alleged arson; and (3) the insured either set the fire, or had it set, which may be proved by unexplained surrounding circumstantial evidence implicating the insured. See S&W Properties v. American Motorist Ins. Co., 668 So.2d 529 (Ala. 1995); Day v. Alfa, 659 So.2d 32 (Ala. 1995); Pennsylvania Mutual Casualty Insurance Co. v. Lane, 656 So.2d 371 (Ala. 1995).

Defendants claim that arson is, in this case, at a very minimum, an arguable basis upon which to deny relief. Defendants' investigative report by Cunningham Investigative Services concludes that the fire was intentionally caused. Ms. Herod's poor financial situation, evidenced by past-due mortgage payments and difficulties in paying insurance premiums, provides ample motive for the intentional burning of her home according to the Defendants. Defendants cite the S&W Properties, Day, and Pennsylvania Mutual

15

cases to support the claim that poor financial condition is the most common evidence of motive in an arson case. See S&W Properties v. American Motorist Ins. Co., 668 So.2d at 533; Day v. Alfa, 659 So.2d at 34; Pennsylvania Mutual Casualty Insurance Co. v. Lane, 656 So.2d at 375.

    Defendants also point to the "unexplained circumstances" surrounding the fire to substantiate their belief that the fire resulted from arson. According to their examination under oath, Ms. Herod and her husband are the only two people who had access to the house. Defendants cite Day v. Alfa, in which access alone amounted to enough evidence to implicate the insureds given the unexplained circumstances surrounding the fire. 659 So.2d 32. Ms. Herod was the last person to leave the house prior to the first fire. She spent the remainder of the day with her husband until he, sometime around midnight, left the hotel they were staying at. Mr. Herod was then seen at the Hokes Bluff Echo gas station on Highway 278 – a location fairly close to the Herods' home. One of the witnesses, a local on-duty police officer named Sgt. Elbert Alberson, identified Mr. Herod and stated that he saw Mr. Herod at the gas station twice on the night of July 28, 1997. According to Sgt. Alberson, the first time he saw Mr. Herod was between midnight and one-o'clock in the morning. Sgt Alberson's statement indicates that Mr. Herod was, at that time, "getting some gas in a jug." After getting the gas, Mr. Herod went east on Highway 278 (toward the Herods' home). The second time Sgt. Alberson saw Mr. Herod was around 3:10 A.M. Mr. Herod, after stopping at the gas station, headed west on Highway 278. Sgt. Alberson stated that clerk at the station told him that Mr. Herod had purchased some food on the second visit. The Echo station clerk confirmed that a man in a blue truck came in twice and during the first visit purchased gasoline. Mr. Herod confirmed in his examination that he owns a blue truck.

    According to the Defendants, the statements of Sgt. Alberson and the clerk in conjunction with the Herods' financial situation and the investigators' conclusion that the second fire resulted from the igniting of an unknown flammable liquid in locations throughout the house provide adequate grounds for implicating

16

the Herods in the burning of their home and for the good faith refusal of the claim. Ms. Herod, claim the Defendants, cannot show that American Central had no arguable reason for the refusal of the claim and cannot establish that the Defendants had actual knowledge of the absence of any legitimate or arguable reason to deny her claim. The Defendants again cite S&W Properties, Inc. v. American Motorists Insurance Co., in which a plaintiff insured brought suit against a commercial property insurer for breach of contract, fraud and bad faith arising out of the failure to pay a claim. 668 So.2d 529 (Ala. 1995). The trial court in S&W entered summary judgment in favor of the insurer on the bad faith and fraud claims in spite of the fact that the plaintiff had presented evidence in contradiction to the insurer's affirmative defense of arson as to the "fire was intentionally set" element. The disputed evidence surrounding whether the fire was or was not intentionally set established, as a matter of law, that the plaintiff was not able to prove that the insurer "had no legal or factual defense to the insurance claims." Id. at 533. According to the Defendants, Plaintiff's bad faith claims fail for the exact same reason. The fact that Ms. Herod disputes that the fires were intentional does not change her evidentiary burden for the bad faith claim.

### B. Plaintiff's Response to Defendants' Arguments Against Bad Faith Claims

The Plaintiff states, in its brief, that "although the insurer in its brief in support of the motion for summary judgment sets out a number of facts upon which they base the assumption that the fires were intentionally set, they have not argued those facts in their brief." Plaintiff claims that the question is a question of fact should be left to the jury. Defendants state that the circumstantial evidence points to Ms. Herod as the instigator of the first fire and that their investigators and the fire department considered the fire to be of "suspicious origin with the stove as the ignition factor." Ms. Herod acknowledges having used the stove on the morning of the fire, but says she did not set the fires and did nothing to intentionally start the fires.

17

The fire investigators hired by American Central to investigate the fire considered them both to be of "suspicious origin" and concluded that the second fire was caused by an unknown flammable or combustible liquid. However, the samples taken from the house and tested revealed no evidence of flammable or combustible material. Plaintiff thus contends that there are no facts presented that the insured set either fire or that she conspired with anyone else to do so and claims that the question of whether or not the fires were set intentionally or whether Plaintiff participated or knew of the fires being intentionally set, is a question of fact for the jury.

## VI. Defendants Motion to Strike Affidavits of Susin Herod and Lee Herod

Defendants have also filed a motion claiming that the affidavits of Mr. And Mrs. Herod are "improper in that they state conclusions which are not based upon personal knowledge of the affiants or facts at issue in the matter." The affidavits, according to Defendants, are presented improperly in a third-party form and are, in fact, legal arguments made by Susin Herod's counsel. Further, the Defendants allege that "the affidavits contain information which is inadmissible hearsay." These two affidavits represent the only evidence Plaintiff offers in support of her reply to the summary judgment motion.

## VII. Court's Conclusions

The court is of the opinion that Defendants clearly had and has a reasonably debatable reason for denying the Plaintiff's claim. Therefore, the bad faith tort claim will be dismissed. The court also concludes that <u>Alfa Mutual Ins. Co. v. Oglesby</u>, 711 So. 2d 938 (Ala. 1998), governs the misrepresentations in application claims. For the <u>present</u>, the court determines that there <u>may</u> be a genuine issue of fact as to the other issues. A delay from August 1 to September 10 in order to secure an attorney does not, in the absence of controlling authority, appear to be an unreasonable delay in submitting to an examination. If any party

18

can pinpoint any issue and cite specific controlling authority, the court will reconsider such issue. The claims against Defendant Commercial Union Insurance Company will be dismissed.

This 23rd day of September, 1998.

ROBERT B. PROPST
UNITED STATES DISTRICT JUDGE